# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**DANIEL GILBERTSON,**
**MATTHEW WALSH, and**
**MATTHEW BRAESCH, on behalf of**
**themselves and all others sharing**
**a question of common and general interest,**

                Plaintiffs,

     -vs-                                                Case No. 15-C-139

**CITY OF SHEBOYGAN,**

                Defendant.

## DECISION AND ORDER

This is a putative class action brought by three current employees of the City of Sheboygan. The plaintiffs allege claims under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and Wisconsin's Wage Claim Statute, Wis. Stat. § 109.03. On cross-motions for summary judgment, the plaintiffs argue that the City's annual bonus payments and reimbursed medical expenses should be counted as part of their regular rate for purposes of calculating overtime premiums. Plaintiffs also argue that the City diverted some monies deducted from their wages for the purpose of paying for workers compensation premiums or expenses in violation of Wis. Stat. § 102.16(3). The City opposes these claims on the merits and also argues that the entire action is barred by Wisconsin's notice of claim provision. Wis. Stat. § 893.80.

For the reasons that follow, the plaintiffs' state law claims are barred by § 893.80. However, the plaintiffs are entitled to summary judgment on their FLSA claims.

## BACKGROUND

The first plaintiff, Daniel Gilbertson, works for the City of Sheboygan Department of Public Works. The other two plaintiffs, Matthew Walsh and Matthew Braesch, work for the City of Sheboygan Police Department. All three plaintiffs were employed by the City at all times relevant to this lawsuit.

In the fall of 2011, the City developed a new compensation program for employees not subject to collective bargaining agreements – i.e., "non-represented" employees – because of changes brought by Act 10 in Wisconsin. Effective January 1, 2012, all non-represented employees were subject to an annual performance evaluation on which their wage increase (if any) is based. 2012 was a "transition year" during which all employees received the same increase in compensation as they became familiar with the evaluation process. Each year thereafter, the City's Common Council set the total amount budgeted for increases. Supervisory personnel then determined the amount, if any, to be paid each non-represented employee, always subject to that budget. Part of the possible wage increase was attributable to a "merit" increase, and part to an "incentive" increase. Not all employees received the maximum increases allotted to these categories.

Starting January 1, 2012, annual evaluations were to be made at the anniversary of a non-represented employee's date of hire. To whatever extent an increase would cause the employee's rate of pay to exceed the maximum for his or her job classification, that excess amount would be paid as a lump sum. For example, if an employee making $10.00 in a job with a maximum classification of $10.10 per hour received a $0.25/hour raise, his new pay rate would be $10.10 per hour and he would receive the remaining $0.15/hour in a lump sum. Merit increases, in general, are paid starting on the semi-monthly payroll distribution date following the employee's hiring anniversary. Any lump sum payment is also made at that time, even if the employee does not work the full year thereafter and no matter the number of hours actually worked during that year.

In 2012 and 2013, the City offered a Health Reimbursement Arrangement ("HRA") benefit to its employees. An HRA program allows an employer to make non-taxable payments of otherwise allowable health costs on behalf of an employee or dependent of the employee. The money can be paid directly to a health care provider or to an employee for reimbursement. In practice, the third-party administrator for the HRA program, Diversified Benefit Services, Inc., paid the portion of the claim eligible for coverage, and Diversified invoiced the City. A sum certain is allocated as the maximum amount of HRA payments to a participant in a year. Unused amounts can be

- 3 -

Case 2:15-cv-00139-PP    Filed 02/05/16    Page 3 of 17    Document 42

carried into the following year, but only to be used for other medical expenses.

As for health insurance, the program provided by the City for its employees is self-insured with reinsurance or "stop-loss" for both individual and aggregate fund claims. The City also maintains a self-insured worker compensation benefit program.

As a self-insured health plan, the City makes a budgetary allocation to fund the employee health benefit and informs employees that it will pay all eligible costs. However, premium costs are set each year to determine rates for retiree and COBRA payments and, since 2012, payment of the employee share of the benefit costs. The rates charged as premiums are determined upon the advice of outside consultants. Employees, as relevant here, pay 10% of the premiums for coverage, with the City paying the balance.

In 2013 and 2014, as each fiscal year was ending and final budget reconciliation for the year was being made, the City determined that it had larger amounts than anticipated and budgeted in its employee health program and shortfalls in its worker compensation reserves. In each of those years, the City transferred money from its employee health plan budget to its worker compensation reserves. These transfers had no effect on the City's payment of all health fund benefits to participants.

The City utilized the recommendations of an independent consultant to set the premium rates on which it bases the payroll deductions for employees

who participate in and share the costs of its employee health benefit plans. Neither the consultant nor the underwriter who provided the data to the consultant ever recommended to the City that premium rates be reduced. In fact, the consultant told the City that it had been lucky that it did not have any catastrophic claims during the 2010-2014 period, and that premium rates should remain at the same levels because that luck was not likely to last.

## ANALYSIS

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The plain language of the rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When cross-motions for summary judgment are filed, courts "look to the burden of proof that each party would bear on an issue of trial; [courts] then require that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact." *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997).

**I. Notice of claim**

In order to commence a lawsuit against a governmental entity in

Wisconsin, a claimant "must, as a precursor to actually filing suit, serve written notice of the circumstances of the claim within 120 days after the happening of the event." *E-Z Roll Off, LLC v. Cnty. of Oneida*, 800 N.W.2d 421, 428 (Wis. 2011) (citing Wis. Stat. § 893.80). The notice of claim provision "delays the filing of potential claims in order to afford the municipality an opportunity to settle the claim without litigation. Section 893.80(1)(b) prohibits an individual from bringing an action against a municipality … unless a notice of claim is first presented and the claim is disallowed. The municipality has 120 days to disallow any claim presented." *State ex rel. Auchinleck v. Town of LaGrange*, 547 N.W.2d 587, 590 (Wis. 1996).

As an initial matter, the City argues that the plaintiffs' failure to provide notice of their claims is dispositive of this entire litigation. However, another judge in this district has held that § 893.80 cannot stand as a bar to FLSA claims. *See Heder v. City of Two Rivers*, 149 F. Supp. 2d 677 (E.D. Wis. 2001) (judgment vacated on other grounds) (citing *Felder v. Casey*, 487 U.S. 131 (1988)). *Heder* is not binding precedent, but the City did not address *Heder* in any of its briefs to the Court. Therefore, the Court will proceed on the assumption that § 893.80 is relevant only in relation to the plaintiffs' claims under the wage claim statute. § 109.03, Wis. Stats. Plaintiffs argue that such claims are exempt from the requirements set forth in § 893.80. Wisconsin courts examine three factors to determine whether to exempt a specific

- 6 -

Case 2:15-cv-00139-PP   Filed 02/05/16   Page 6 of 17   Document 42

statute from the notice of claim requirements.

First, courts consider "'whether there is a specific statutory scheme for which the plaintiff seeks exemption' from the notice of claim requirements found in Wis. Stat. § 893.80. If a statute provides a specific statutory scheme that conflicts with the general intent behind the 120-day time limit provided in Wis. Stat. § 893.80, then the specific statutory scheme will take precedence." *E-Z Roll Off*, 800 N.W.2d at 429 (quoting *Town of Burke v. City of Madison*, 593 N.W.2d 822, 826 (Wis. Ct. App. 1999)). Only statutes that specifically allow claimants to obtain or pursue relief more quickly than § 893.80 allows will prevail over the general application of § 893.80. *See id.* at 430 (collecting cases). For example, when a statute "allows a claimant to seek immediate injunctive relief, that statute irreconcilably conflicts with the general notice of claim provisions of Wis. Stat. § 893.80, 'which requires a plaintiff to provide a governmental body with a notice of claim, and to wait 120 days or until the claim is disallowed before filing an action.'" *Id.* at 429-30 (citing *Gillen v. City of Neenah*, 580 N.W.2d 628 (Wis. 1998)). Claims under the wage claim statute present no such conflict. *Id.* at 430 (claims for declaratory relief and damages do not "conflict with providing governmental entities a 120-day period to review a claim").

Second, courts consider whether the legislature has expressed a preference for prompt resolution of the type of claim under consideration, and

- 7 -

if so, whether "applying the 120-day notice of claim requirements would somehow hinder that preference." *E-Z Roll Off* at 431. In *E-Z Roll Off*, the Wisconsin Supreme Court held that § 893.80 promotes, rather than hinders, the legislative preference for prompt resolution of antitrust actions.

> This is so because ordinarily a plaintiff has six years to seek damages pursuant to Wis. Stat. § 133.18. … However, if a plaintiff advances a claim against a governmental entity, it is subject to the notice of claim requirements. … In that case, the plaintiff would be required to serve written notice of the claim upon the governmental entity within 120 days after the event giving rise to the claim. … If the claim is disallowed, the plaintiff whose claim has been denied would have only six months, as opposed to the six years otherwise afforded by Wis. Stat. § 133.18(2), to file the complaint. … It is clear that such timelines encourage, rather than hinder, the prompt resolution of § 133.18 actions.

*Id.* at 431-32 (internal citations omitted). The same logic applies to claims under Chapter 109, which are subject to a two-year statute of limitations. § 109.09(1).

Third, courts consider "'whether the purpose for which § 893.80(1) was enacted would be furthered by requiring that a notice of claim be filed.'" *E-Z Roll Off* at 432 (quoting *Town of Burke*, 593 N.W.2d at 826). The notice of claim statute serves two purposes: (1) to give governmental entities the opportunity to investigate and evaluate potential claims, and (2) to afford governmental entities the opportunity to compromise and budget for potential settlement or litigation. *Thorp v. Town of Lebanon*, 612 N.W.2d 59, 69-70

- 8 -

(Wis. 2000). Once again, the reasoning in *E-Z Roll Off* is directly on point, substituting two years for six years: "It is axiomatic that a governmental entity can more effectively investigate the circumstances surrounding a claim that accrued within the 120 days preceding the receipt of notice than it can investigate a claim that accrued up to six years in the past." 800 N.W.2d at 432. Moreover, "it is easier for a governmental entity to compromise with a claimant when the governmental entity has the 120-day period required by the notice of claim statute in which it may review the claim and negotiate with the claimant prior to the commencement of litigation. … [T]his period grants governmental entities 120 days in which to adjust budgets to account for potential settlement or litigation." *Id.* at 432-33.

In opposition, the plaintiffs argue that § 893.80 actually disincentivizes prompt wage payments and conflicts with Chapter 109 because a government entity does not face any threat of a lawsuit before a notice of claim is filed. This argument is nonsensical. Government employers are subject to all attendant liabilities, including penalties, so long as the plaintiff complies with § 893.80. Accordingly, government employers do not lose their incentive to comply with Chapter 109 – or any other law – simply because claimants are forced to wait before filing suit. No rational employer, even a government employer, would wrongfully withhold wages and risk a stiff penalty in the hopes that its employees won't serve a valid and timely notice of claim. *See*

- 9 -

§ 109.11(2)(a) (court "may order the employer to pay to the employee, in addition to the amount of wages due and unpaid …, increased wages of not more than 50% of the amount of wages due and unpaid").

Plaintiffs also argue that the notice of claim requirement is inconsistent with Chapter 109's provision that allows the Department of Workforce Development to audit an employer's records and refer "other wage claims of the same type as the wage claim that prompted the audit" to the district attorney or the department of justice. § 109.11(1)(b). Nothing in this procedure precludes the filing of a timely notice of claim by or on behalf of other employees who consent to join in such a collective action. What plaintiffs are really objecting to is the inability to proceed on behalf of *unidentified* claimants. In this context, the notice of claim statute conflicts with Wisconsin's class action statute, Wis. Stat. § 803.08, not the wage claim statute, and Wisconsin courts have already resolved that conflict in favor of the former. *See Townsend v. Neenah Joint Sch. Dist.*, 856 N.W.2d 644, 648 (Wis. Ct. App. 2014) ("a class action in which representatives sue on behalf of unidentified persons may never be pursued against a governmental body in Wisconsin"); *see also Markweise v. Peck Foods Corp.*, 556 N.W.2d 326 (Wis. Ct. App. 1996); *Carpenter v. Racine Comm'r of Pub. Works*, 339 N.W.2d 608 (Wis.

Ct. App. 1983).[1]

Plaintiffs argue further that § 893.80 cannot be used to promote settlements because Chapter 109 actually *prohibits* settlements. Plaintiffs cite § 109.03(5), which provides that "no employer may by special contract with employees or by any other means *secure exemption* from this section." (emphasis added). This section does not preclude private settlement of wage claims. Instead, it forbids an arrangement whereby an employer seeks to preclude application of the wage claim statute on a forward-looking basis.

Finally, plaintiffs argue that the statutes conflict because the notice of claim statute allows the government to recover costs if the claimant recovers less than what the government offered to settle the claim. § 893.80(2). By contrast, only a prevailing employee or the DWD is allowed to recover costs under the wage claim statute. § 109.03(6). This conflict is tangential to the real issue: whether the wage claim statute "conflicts with the general intent behind the *120-day time limit* provided in Wis. Stat. § 893.80." *E-Z Roll Off* at 429 (emphasis added). It doesn't. Plaintiffs' claims under § 109.03, Wis. Stats., are barred by the notice-of-claim provisions in § 893.80.

## II. Over-the-scale bonuses

Section 7(a)(1) of the FLSA provides that "no employer shall employ

---

[1] As noted above, § 893.80 does not bar the plaintiffs' FLSA claims. Therefore, these holdings do not bar FLSA claims on behalf of similarly situated employees.

- 11 -

any of his employees … for a workweek longer than forty hours unless such employee receives compensation in excess of the hours above specified at a rate not less than one and one-half times the *regular rate* at which he is employed." 29 U.S.C. § 207(a)(1) (emphasis added). The "regular rate" includes "all remuneration for employment paid to, or on behalf of, the employee," § 207(e), subject to certain narrowly construed exemptions. *Cleveland v. City of Los Angeles*, 420 F.3d 981, 988 (9th Cir. 2005) (citing *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)).

The City argues that the lump-sum bonus payments given to employees at the top of their position's wage scale are excludable from the regular rate because they are discretionary, uncertain, and not related to hours worked. As to discretion, sums that are "paid in recognition of services performed during a given period" are excluded from the regular rate if "both the fact that payment is to be made and the amount of the payment are determined at the *sole discretion* of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly." § 207(e)(3) (emphasis added). Both the 2013 and 2014 compensation programs for non-represented employees provide that merit increases "*are not automatic*, nor does an employee acquire any right to an increase because of length of service or time in a job." Adams Aff., Ex. 1, SHE000538 (emphasis added). Instead, once "the

- 12 -

budget has been approved, it is up to each supervisor and/or department head to approve the amounted [sic] granted to the employee." *Id.*

However, "bonuses which are based on *objective criteria* or that are routinely given may give rise to an implied bonus contract which must be included in the calculation of regular rate." *Wang v. Chinese Daily News, Inc.*, 435 F. Supp. 2d 1042, 1055 (C.D. Cal. 2006) (emphasis added) (vacated on other grounds, 132 S. Ct. 74 (2011)). Non-represented employees are evaluated based on the following factors: quality of work, quantity of work, job knowledge, work area/safety, adaptability, cooperation, attitude, dependability, and attendance/punctuality. ECF No. 19-7. In each area, and then in terms of overall performance, the employee's supervisor determines whether the employee is not competent ("unacceptable"), working towards competency ("below"), competent ("successfully achieved"), or overwhelmingly exceeding expectations ("exceeds"). Accordingly, even though the City retains the discretion to grant or deny a bonus, the bonuses are promised so long as the employee meets certain objective criteria. This is not to deny that there is a subjective component to the City's evaluation process. At the same time, the applicable regulation provides that bonuses "which are announced to employees to induce them to work more steadily or more rapidly or more efficiently or to remain with the firm are regarded as part of the regular rate of pay." 29 C.F.R. § 778.211(c). The City's bonus plan falls directly into this
- 13 -

category. *See Alonzo v. Maximus, Inc.*, 832 F. Supp. 2d 1122, 1131-32 (C.D. Cal. 2011); *McLaughlin v. McGee Bros. Co., Inc.*, 681 F. Supp. 1117, 1133 (W.D.N.C. 1988) ("incentive-type bonuses were given pursuant to an agreement or understanding as a reward for specific employee behavior and therefore must be included in the regular rate").

Moreover, it bears mentioning that the same evaluation system was used to give wage increases that *were* included in calculating the employees' regular rate for overtime pay. ECF No. 27, Stipulated Facts and Conclusions of Law, ¶¶ 4-6. The only reason an employee received a bonus instead of a raise was due to the happenstance of the employee having reached the top of the pay scale. This is not a relevant distinction for purposes of determining whether payments should be included in the regular rate.

Thus, the plaintiffs are entitled to summary judgment on their claim that over-the-scale lump sum bonuses should have been included in calculating their regular rate for overtime pay. Under 29 U.S.C. § 255(a), the statute of limitations for FLSA violations is two years unless the violation was willful, in which case the limitations period is three years. Since this action was filed in December of 2014, the Court's ruling applies to bonus payments made in 2013 and thereafter. As for 2012, the City appears to concede, and the Court now rules, that the 2012 bonus payments also should have been included in the regular rate due to the lack of discretion in making those

payments. The only issue for trial is whether the 2012 violations were willful.

## III. HRA reimbursement

The City's HRA program was used to reimburse employees for otherwise uninsured medical expenses. The City argues that these payments fall within section 7(e)(4), which excludes from the regular rate "contributions irrevocably made by an employer to a trustee or third person pursuant to a bona fide plan for providing old-age, retirement, life, accident, or health insurance or similar benefits for employees." § 207(e)(4). It is undisputed that the amounts at issue were not irrevocable contributions to a trustee or third person. Instead, the HRA administrator would pay benefits to or on behalf of the employee and then receive reimbursement from the City. The City argues that the ultimate impact is the same. That may be true, but this arrangement does not satisfy the plain language of the exception. *See* 29 C.F.R. § 778.215(a)(4) (explaining that the trustee "must assume the usual fiduciary responsibilities imposed upon trustees by applicable law").

Another possible exception is section 7(e)(2), which excludes "payments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause; reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an

employee which are not made as compensation for his hours of employment …" § 207(e)(2). The regulation explains that "where an employee incurs expenses *on his employer's behalf* or where he is required to expend sums solely by reason of action taken for the convenience of his employer, section 7(e)(2) is applicable to reimbursement for such expenses." 29 C.F.R. § 778.217(a) (emphasis added). By contrast, if "the employer reimburses the employee for expenses normally incurred by the employee *for his own benefit*, he is, of course, increasing the employee's regular rate thereby." § 778.217(d) (emphasis added). Medical expense reimbursement payments are personal to and for the benefit of the employee. Accordingly, HRA reimbursement payments should have been included in the plaintiffs' regular rate.

### IV. Other claims and remaining issues

The City stipulated that education bonuses and payments for opting out of health insurance must be included in the regular rate computation. Thus, the plaintiffs are entitled to summary judgment on all of their claims under the FLSA. What remains to determine at trial is the amount of damages and also whether the failure to include 2012 bonus payments in the regular rate calculation was willful. The City is entitled to summary judgment on the plaintiffs' state law claims due to their failure to comply with the notice-of-claim statute.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. The parties' motions for summary judgment [ECF Nos. 19 and 26] are **GRANTED-IN-PART** and **DENIED-IN-PART**, consistent with the foregoing opinion; and

2. A telephonic status conference is scheduled for **March 22, 2016** at **10:30 a.m. (Central Time)** to discuss further proceedings, including conditional certification, class certification, and calculation of damages. The Court will initiate the call.

Dated at Milwaukee, Wisconsin, this 5th day of February, 2016.

**BY THE COURT:**

*[signature]*

**HON. RUDOLPH T. RANDA**
**U.S. District Judge**